GARY M. RESTAINO
United States Attorney
District of Arizona
Matthew Williams
Assistant U.S. Attorney
Arizona State Bar No. 029059
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: matthew.williams3@usdoj.gov

GLENN S. LEON
Chief
Criminal Division, Fraud Section
U.S. Department of Justice
Shane Butland
Trial Attorney
1400 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-286-1177
Email: shane.butland2@usdoj.gov

Attorneys for Plaintiff

☐ FILED   ☒ LODGED

**FEB 10 2025**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Daylon Bennett,<br><br>Defendant. | No.   CR-25-00090-PHX-DWL (JZB)<br><br>**PLEA AGREEMENT** |

Plaintiff, United States of America, and the defendant, Daylon Bennett, hereby agree to resolve this matter on the following terms and conditions:

1. **PLEA**   AMENDED  SB  mw  [initials]

The defendant will plead guilty to an Information charging the defendant with a violation of Title 18, United States Code, § 1349, Conspiracy to Commit Health Care Fraud, a Class C felony offense, and a violation of Title 18, United States Code, § 371,

Conspiracy to Defraud the United States and to Solicit and Receive Health Care Kickbacks, a Class D felony offense.

2. **MAXIMUM PENALTIES**

    a. A violation of 18 U.S.C. § 1349 is punishable by a maximum fine of $250,000 or twice the pecuniary gain or loss incurred by another, a maximum term of imprisonment of 10 years, and a term of supervised release of 3 years, or all three combined. The maximum term of probation is 5 years (including a minimum term of one year if probation is imposed).

    b. A violation of 18 U.S.C. § 371 is punishable by a maximum fine of $250,000 or twice the pecuniary gain or loss incurred by another, a maximum term of imprisonment of 5 years, and a term of supervised release of 3 years, or all three combined. The maximum term of probation is 5 years (including a minimum term of one year if probation is imposed).

    c. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

        (1) make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663A, unless the Court determines that restitution would not be appropriate;

        (2) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

        (3) serve a term of supervised release when a sentence of imprisonment of more than one year is imposed; and

        (4) pay upon each conviction a $100 special assessment pursuant to 18 U.S.C. § 3013, for a total of $200.

    d. The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime of conviction, unless there are stipulations to the contrary that the Court accepts.

3. **EXCLUSION FROM FEDERAL HEALTH CARE PROGRAMS**

The defendant understands and acknowledges that as a result of this plea, the defendant will be excluded as a provider from Medicare, Medicaid, and all federal health care programs. The defendant agrees to complete and execute all necessary documents provided by any department or agency of the federal government, including, but not limited to, the United States Department of Health and Human Services, to effectuate the exclusion within 60 days of receiving the documents. The exclusion will not affect the defendant's right to apply for and receive benefits as a beneficiary under any federal health care program, including Medicare and Medicaid.

4. **AGREEMENTS REGARDING SENTENCING**

   a. <u>Recommendations</u>: The United States and the defendant recommend the following as to the sentence to be imposed:

   (1) <u>Grouping</u>. Counts 1 and 2 are grouped for Guideline calculation purposes pursuant to U.S.S.G. § 3D1.2.

   (2) <u>Base Offense Level</u>. The defendant's base offense level is 6 pursuant to U.S.S.G. § 2B1.1(a)(2).

   (3) <u>Loss Amount</u>. A reasonable estimate of the defendant's intended loss is more than $550,000,000, resulting in an increase of 30 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(P).

   (4) <u>Federal Health Care Offense</u>. The defendant is pleading guilty to a federal health care offense involving a loss to a government health care program exceeding $20,000,000, resulting in an increase of 4 levels pursuant to U.S.S.G. § 2B1.1(b)(7).

   (5) <u>Aggravating Role</u>. The defendant's offense level shall be increased by 3 levels pursuant to U.S.S.G. § 3B1.1(b), as he was a manager or supervisor and the criminal activity involved five or more participants or was otherwise extensive.

   (6) <u>Low End</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend that the defendant's sentence shall not exceed the low end of the sentencing range as calculated under U.S.S.G. § 1B1.1(a).

(7) <u>Acceptance of Responsibility.</u> If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offenses, and if the defendant demonstrates an acceptance of responsibility for these offenses up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

(8) <u>Non-Binding Recommendations.</u> The defendant understands that recommendations are not binding on the Court. The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

b. <u>Restitution.</u> Pursuant to 18 U.S.C. § 3663A, the defendant specifically agrees to pay full restitution, regardless of the resulting loss amount but in no event more than $435,937,149, to all victims directly or proximately harmed by the defendant's "relevant conduct," including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663, or 3663A. The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement. The defendant specifically agrees to restitution to the following health care benefit programs in the amounts listed below:

| | | | |
|---|---|---|---|
| (1) | Medicare: | | $421,389,330.88 |
| (2) | TRICARE: | | $5,123,587.25 |
| (3) | Anthem Elevance: | | $466,982.65 |
| (4) | Bankers Fidelity Life Insurance: | | $811,235.07 |
| (5) | Blue Cross Blue Shield of Arizona: | | $2,722,960.22 |
| (6) | Blue Cross Blue Shield of Minnesota: | | $7,869.44 |

| | | | |
|---|---|---|---|
| (7) | Blue Cross Blue Shield of Nebraska: | | $236,417.83 |
| (8) | Blue Cross Blue Shield of North Dakota: | | $165,207.95 |
| (9) | Blue Shield of California: | | $13,082.86 |
| (10) | Cigna: | | $778,053.72 |
| (11) | Humana: | | $1,707,083.54 |
| (12) | Moda Health: | | $902,381.38 |
| (13) | Mutual Omaha Health Insurance: | | $86,568.90 |
| (14) | National Association of Letter Carriers: | | $627,737.53 |
| (15) | United Healthcare: | | $525,117.17 |
| (16) | Western & Southern Life Insurance: | | $373,533.00 |

c. <u>CMS Suspended Payments</u>: The defendant further agrees to waive any ownership interest he may have in the $87,641,543.44 currently suspended by the Centers for Medicare and Medicaid Services ("CMS") ("the Suspended Amount"). The Suspended Amount constitutes payments suspended by CMS based on certain false and fraudulent claims made by APX Mobile Medical LLC to Medicare. The defendant expressly relinquishes any and all rights of any kind that he, or any companies over which he had control, may have with respect to the Suspended Amount, including, but not limited to, any and all claims or rights to have an overpayment determined under 42 C.F.R. § 405.372(c), any and all rights to payment of those funds, and any and all rights to appeal, whether formally or informally and whether administratively or judicially, the right of the United States and/or CMS to retain those funds.

d. <u>Assets and Financial Responsibility</u>. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the

defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

5. **AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

   a. This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office or Section of the U.S. Department of Justice.

6. **COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

   a. If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

   b. If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

7. **WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the Information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c) (except for the right to file a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

8. **DISCLOSURE OF INFORMATION**

a. The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b. Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c. The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1) criminal convictions, history of drug abuse, and mental illness; and

(2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

9. **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

   a. Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

   b. The defendant agrees to forfeit, and hereby forfeits, all interest in any asset that the defendant owns or over which the defendant exercises control, directly or indirectly, as well as any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of the offense, or which was used to facilitate the commission of the offense, including but not limited to the following property:

   A sum of money equal to approximately $17,953,662, which amount represents the proceeds that the defendant obtained, directly or indirectly, possessed, owned, and exercised dominion or control.

   c. The defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding

notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant further understands and agrees that forfeiture of the assets is appropriate and in accordance with the applicable forfeiture statutes, which may include Title 8 U.S.C. § 1324(b), Title 18 U.S.C. §§ 924(d), 981, 982 and 2253, Title 21 U.S.C. §§ 853 and 881, and Title 28 U.S.C. § 2461(c).

  d. Except as provided in subparagraph 9.k below, forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this court may impose upon the defendant in addition to the forfeiture. This agreement does not preclude the United States from instituting any civil or administrative forfeiture proceedings as may be appropriate now or in the future.

  e. The defendant agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, double jeopardy, or any other means) to any forfeiture imposed as a result of this guilty plea or any pending or completed administrative or civil forfeiture actions, including that the forfeiture constitutes an excessive fine or punishment. The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. The defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, property facilitating illegal conduct, and substitute assets for property otherwise subject to forfeiture, and that no other person or entity has a legitimate claim to these items listed.

  f. The government reserves its right to proceed against any remaining assets not identified either in this agreement or in any civil actions which are being resolved along with this plea of guilty, including any property in which the defendant has any interest or control, if said assets, real or personal, tangible or intangible, were involved in or proceeds of the offense. The defendant hereby waives and agrees to hold the government and its agents and employees harmless from any and all claims whatsoever in connection with the seizure, forfeiture, and disposal of the property listed above. Without limitation, the

defendant understands and agrees that by virtue of this plea of guilty, the defendant will waive any rights or cause of action that the defendant might otherwise have had to claim that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related civil forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

g.   The defendant has agreed in principle to a settlement with the United States, which remains subject to final approval by the Civil Division of the U.S. Department of Justice, to resolve the defendant's potential liability under the False Claims Act, 31 U.S.C. §§ 3729-3733, and other civil claims and remedies under which he agrees to pay an amount to be determined prior to sentencing ("the Civil Settlement Amount"), for his role in causing the following losses to government health care benefit programs:

(1) $421,389,330.88 to Medicare; and

(2) $5,123,587.25 to TRICARE.

h.   The defendant agrees to enter a settlement agreement with the United States, subject to approval by the Civil Division of the U.S. Department of Justice, memorializing the agreement in principle described in the preceding subparagraph.

i.   The defendant agrees that because the False Claims Act provides for treble damages and civil penalties, the Civil Settlement Amount may exceed $426,512,918.13, and that the settlement terms, including monetary terms, remain subject to final approval by the Civil Division of the U.S. Department of Justice.

j.   The defendant agrees that any or all of his payments toward restitution under subparagraphs 4.b.1 and 4.b.2 and the liquidated value, net of any expenses or costs of liquidation, storage, or maintenance, of any or all of his forfeited assets, that is remitted to Medicare and TRICARE may be credited to the Civil Settlement Amount, subject to the approval of the United States.

k.   The defendant agrees that no portion of the Suspended Amount will be credited to the Civil Settlement Amount.

10. <u>ELEMENTS</u>

**Conspiracy to Commit Health Care Fraud**
**(18 U.S.C. § 1349)**

To prove the crime of Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. § 1349, the government must prove the following elements beyond a reasonable doubt:

1. There was an agreement between two or more persons to commit the crime of health care fraud, in violation of 18 U.S.C. § 1347; and

2. The defendant became a member of the conspiracy knowing its object and intending to help accomplish it.

**Health Care Fraud**
**(18 U.S.C. § 1347)**

To prove the crime of Health Care Fraud, in violation of 18 U.S.C. § 1347, the government must prove the following elements beyond a reasonable doubt:

1. The defendant knowingly and willfully executed or attempted to execute a scheme to defraud a health care benefit program, or a scheme or plan to obtain money or property owned by or under the custody or control of a health care benefit program, by means of materially false or fraudulent pretenses, representations, or promises;

2. The defendant acted with the intent to defraud; that is, the intent to deceive and cheat;

3. Medicare, TRICARE, and Commercial Insurers were health care benefit programs; and

4. The scheme or plan was executed in connection with the delivery of or payment for health care benefits, items, or services.

**Conspiracy to Defraud the United States and to**
**Solicit and Receive Health Care Kickbacks**
**(18 U.S.C. § 371)**

1. There was an agreement between two or more persons to defraud the United States by obstructing the lawful functions of the U.S. Department of Health

and Human Services by deceitful or dishonest means, and to solicit and receive health care kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(1); and

2. The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

3. One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

**Solicitation and Receipt of Health Care Kickbacks**
**(42 U.S.C. § 1320a-7b(b)(1))**

1. The defendant knowingly and willfully solicited or received any kickback, bribe, or rebate;

2. The kickback, bribe, or rebate was solicited or received in exchange for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service, or purchasing, leasing, ordering, or arranging for or recommending the purchasing, leasing, or ordering any item or service;

3. The patient's items or services were covered, in whole or in part, by Medicare or TRICARE; and

4. Medicare and TRICARE are federal health care programs.

11. **FACTUAL BASIS**

   a. The defendant admits that the following facts are true and that if this matter were to proceed to trial, the United States could prove the following facts beyond a reasonable doubt:

   b. Beginning in or around July 2023, and continuing through in or around April 2024, within the District of Arizona and elsewhere, the defendant knowingly and willfully agreed and conspired with Alexandra Gehrke ("Gehrke"), Jeffrey King ("King"), individuals associated with Company 1, APX, Apex, and Viking, and others:

   (1) To commit health care fraud, in violation of 18 U.S.C. § 1347, by

unlawfully enriching himself and others by causing the submission of false and fraudulent claims to Medicare, TRICARE, and Commercial Insurers[1] for amniotic wound allografts ("allografts") ordered and purchased from Company 1 that were medically unreasonable, medically unnecessary, and ineligible for reimbursement, in violation of 18 U.S.C. § 1349; and

(2) To defraud the United States by obstructing the lawful functions of the U.S. Department of Health and Human Services by causing the submission of false and fraudulent claims to Medicare for allografts that were medically unreasonable, medically unnecessary, and ineligible for reimbursement, and to solicit and receive kickbacks, in violation of 18 U.S.C. § 1320a-7b(b)(1), by soliciting and receiving kickbacks in exchange for: (i) referring individuals to others for the furnishing of allografts; (ii) arranging for the furnishing of allografts; and (iii) ordering and recommending the ordering of allografts purchased and ordered from Company 1 that were covered in whole or in part by Medicare, in violation of 18 U.S.C. § 371.

Medicare and TRICARE are "health care benefit programs," as defined in 18 U.S.C. § 24(b), and "federal health care programs," as defined in 42 U.S.C. § 1320a-7b(f). The Commercial Insurers are "health care benefit programs," as defined in 18 U.S.C. § 24(b).

Gehrke co-owned, controlled, operated, and served as the Chief Executive Officer of Apex Medical LLC ("Apex"). Gehrke also solely owned, controlled, and operated Viking Medical Consultants LLC (d/b/a Viking Medical Marketing LLC) ("Viking"). King co-owned, controlled, and operated APX Mobile Medical LLC ("APX").

Company 1, a limited liability company formed in Texas, was a wholesale distributor of allografts. Medicare reimbursed claims for the allografts distributed by

---

[1] The Commercial Insurers include, but are not limited to, Anthem Elevance Health, Bankers Fidelity Life Insurance, Blue Cross Blue Shield of Arizona, Blue Cross Blue Shield of Minnesota, Blue Bross Blue Shield of Nebraska, Blue Cross Blue Shield of North Dakota, Blue Shield of California, Cigna, Humana, Moda Health, Mutual Omaha Health, National Association of Letter Carriers, United Healthcare, and Western & Southern Life Insurance Company.

Company 1 at an extremely high rate, exceeding $1,000 per square centimeter for certain allografts.

APX was an enrolled Medicare provider and submitted claims to Medicare for payment, including claims for the furnishing of allografts purchased from Company 1.

Apex and Viking arranged for and recommended the ordering and purchasing of allografts sold by Company 1. Apex and Viking also referred patients to APX, among other Medicare enrolled providers, for the furnishing of allografts purchased from Company 1.

Gehrke, through Apex and Viking, contracted with medically untrained sales representatives to arrange for and recommend the ordering and purchasing of allografts sold by Company 1, and to refer patients to enrolled Medicare providers, including APX, for the furnishing of allografts purchased from Company 1.

Gehrke paid the sales representatives illegal kickbacks based on the size and quantity of Company 1's allografts that were applied to patients and billed to Medicare.

Between in or around July 2023, through in and around August 2023, the defendant contracted with Apex as a "sales representative." In that role, the defendant, at the direction of Gehrke, King, and others, located facilities with elderly populations, such as nursing homes, assisted living facilities, and hospice facilities, and identified patients with any wound at any stage. The defendant, who had no medical training, ordered and recommended the ordering of allografts from Company 1 for these patients' wounds based on his own assessment of the wounds, irrespective of whether allografts were reasonable or medically necessary. The defendant then referred the patients he identified to APX for the application of the allografts.

King, through APX, contracted with nurse practitioners to apply allografts that the defendant ordered and recommended to be ordered to the patients referred by the defendant and other sales representatives with Apex and Viking, and billed Medicare, TRICARE, and Commercial Insurers for the allografts applied.

Gehrke, through Apex, paid the defendant illegal kickbacks based on the quantity and size of Company 1's allografts that the nurse practitioners applied to the patients referred by the defendant and that APX billed to Medicare.

In and around September 2023, Gehrke promoted the defendant to Apex's Director of Sales. The defendant held this role through in and around April 2024 with both Apex and Viking. In this role, the defendant, among other things, trained Apex and Viking sales representatives how to identify patients and measure wounds; authorized and directed Apex and Viking sales representatives to order and recommend the ordering of certain sizes and quantities of Company 1's allografts, oftentimes based on nothing more than a photograph of the patient's wound texted to the defendant by a sales representative; assisted Gehrke with distributing monthly kickback checks to Apex's sales representatives; conducted performance reviews with sales representatives; and resolved conflicts with health care facilities that complained about Apex, Viking, and APX's involvement in the treatment of their patients.

As Director of Sales, the defendant received compensation based on a percentage of the total amount paid to APX by Medicare, TRICARE, and Commercial Insurers for Company 1's allografts that were ordered and recommended to be ordered by all Apex and Viking's sales representatives.

As both a sales representative and Director of Sales, the defendant ordered—and recommended, authorized, and directed the ordering of—allografts billed to Medicare, TRICARE, and Commercial Insurers that were medically unreasonable, medically unnecessary, and ineligible for reimbursement.

From approximately July 2023 through approximately August 2023, APX fraudulently billed Medicare approximately $11,134,800 for Company 1's allografts that the defendant ordered and recommended to be ordered that were applied by APX's nurse practitioners to Medicare beneficiaries. Medicare paid APX approximately $8,907,840 based on those claims.

From approximately September 2023 through approximately April 2024, APX billed Medicare, TRICARE, and Commercial Insurers approximately $759,603,166 for Company 1's allografts that were ordered and recommended to be ordered by Apex and Viking sales representatives under the management and supervision of the defendant and applied by APX's nurse practitioners. Medicare, TRICARE, and Commercial Insurers paid APX approximately $427,029,309.39 based on those claims.

Between on or about July 15, 2023, and on or about April 15, 2024, the defendant received approximately $17,953,662 in illegal kickbacks from Gehrke in exchange for (i) the ordering and arranging for and recommending the purchasing and ordering of Company 1's allografts billed to Medicare, TRICARE, and Commercial Insurers as an Apex sales representative; and (ii) recommending, authorizing, and directing the same as Apex and Viking's Director of Sales.

In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed the following overt acts, among others: on or about December 13, 2023, the defendant deposited a $5,134,569.16 check into his JPMC account ending in 9798 in the name of Max Out Medical LLC that was drawn on Apex JPMC account ending in 9686 and signed by Gehrke; and on or about March 15, 2024, the defendant deposited a $2,163,259.97 check into JPMC account ending in 9798 in the name of Max Out Medical LLC that was drawn on Viking JPMC account ending in 1090 and signed by Gehrke.

c.  The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement, and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone

(including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

12/29/2024   12/30/2024
Date

DAYLON BENNETT
Defendant

## APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offenses to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

12/30/2024
Date

TODD A. SPODEK
Attorney for Defendant

## APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

GARY M. RESTAINO
United States Attorney
District of Arizona

12/13/24
Date

/s/ Matthew Williams
MATTHEW WILLIAMS
Assistant U.S. Attorney

GLENN S. LEON
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

December 13, 2024
Date

/s/ Shane Butland
SHANE BUTLAND
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

## ACCEPTANCE BY THE COURT

_____
Date

_____
HON.
United States District Judge